Association. Your Honor, the the PTO erred in construing the jurisdictional statute. If we affirm the 101 decision in the other case, is there any need for us to reach a decision here? Isn't this patent dead and therefore isn't this case moot? Your Honor, if you decide the 101 issue against us, the court does not have to read this, reach this particular issue on CBM jurisdiction. So it's it's moot. If we, if the patent's invalid in the district court case, then there's no need to readdress what this PTO did here on CBM. That's correct. It's not required, Your Honor. I would say that this court would vacate the decision below as moot. In other words, it's not sitting out there as a decision that this court is affirming. Well, we'll ask Mr. Davis if he shows that here. Understood, Your Honor. The argument here with respect to whether this is a CBM, proper CBM proceeding seems to turn, in your view, on the fact that there is a dependent claim which talks about this being non-financial and that therefore the independent claim must include things that are non-financial. That is part of it, Your Honor, when we think about... Let's talk about that part of it. Certainly. Why isn't an appropriate construction of that dependent claim, I think it is five, when it's talking about something being non-financial, that it's not related to payment in view of the definitions which appear in the patent itself about what's financial or non-financial. Your Honor, so you're talking... Wait. It's a claim that extends beyond the issue of payment. Your Honor, the dependent claim five is talking about the transaction that's recited in the preamble as well as the various steps of the claim. The electronic transaction at issue is this broader concept of engaging in activities involving the Internet. And so when this dependent claim talks about the electronic transaction during when this authentication is it's identifying transactions involving e-commerce and the dependent claim then goes on to say those transactions can be... are non-financial in nature. So the point is... But I don't think you're addressing my question. Isn't a reasonable construction of claim five, which talks about a non-financial transaction referring to something that doesn't involve payment in view of the definition of financial information in column two of the patent as relating financial information to the use of a credit card. In other words, the transaction referenced in claim five when it says the transaction is a non-financial transaction means that it's not a payment transaction. It could be, for example, an ordering transaction for Internet goods. I understand your Honor's question now. The answer is yes. It can be construed and understood to be an activity that is not involving an exchange of money. And that would be a reasonable construction, which brings us back to its relationship with the independent claim. So here under the broadest reasonable interpretation standard, which is what we use at the PTO until they decide otherwise, the independent claim talks about a transaction but doesn't specifically say it's financial or non-financial in nature. In other words, it's broader in scope. The way it was construed by the board was that it has to relate to purchase of goods and services. It can relate to purchase of goods and services without relating to the payment for those goods and services, right? That's correct, Your Honor. That's correct. And this concept of... Why isn't a claim, which is financial in nature, that addresses the method or procedures for making a purchase but doesn't relate to payment, why isn't that within the CBM statute? That is what business does. Your Honors, when we talk about goods and services, as you note, it doesn't relate to payment, but it doesn't necessarily involve exchange of money. And remember, when we're looking at the claims as... That's not the question, though. So it involves, for example, the ability to pick up the goods that were purchased, okay? And you have an electronic verification for that. It's not exchange of money. It's the other end of the transaction in which the goods are received. Now, I think that's what the question is. And, Your Honor, I will say this. When we're talking about the electronic transaction, the focus of the claims is what we have to look at for CBM jurisdiction. And the focus of the claims is not on what kind of transaction is occurring until we get to Dependent Claim 5. It's describing this... I don't understand what you're saying. If a claim is limited, let's take Judge Wallach's example, is limited to picking up goods that you purchased on the Internet and verification connection with that, isn't that sufficient to come within the CBM statute? It's not, Your Honor. Why not? Under this Court's prior case law, including Versada, the concept of engaging in e-commerce and exchange of goods and services is not enough to make it a covered business method patent. There has to be this focus on a financial aspect that's embedded within the plain language of the claims or the claims as construed. And these claims... A particular claim that relates to the means for picking up a purchased good that has been purchased over the Internet. And you don't think that comes within the CBM statute? The claim as construed relates to e-commerce activities that can involve goods and services. But if a claim may involve financial transactions, that is not enough to bring it within the scope of CBM jurisdiction. In other words, if it's broader and encompasses both financial and non-financial... Well, the question is what's meant by financial? What I'm suggesting to you here is that the dependent claim, when it says financial, is referring to actual payment, which is consistent with the definitions that were included here in the patent. And it seems to me that is a much narrower definition of financial than the statutory definition of financial product or service. A claim which relates to verification for picking up the purchased goods certainly fits within the practice, administration, or management of a financial product or service.  No. Two points, Your Honor. First, claims 4 and 29, which relate to transactions that are financial in nature, they were disclaimed before initiation of the CBM proceedings. Claims 4 and 29. Going to 5 and 30, as well as claim 1, they don't claim financial... You're not answering my question. I'm asking a hypothetical. Let's assume the hypothetical has a claim for a method of verifying identity for picking up goods that were purchased over the Internet. That's the hypothetical claim, okay? Is that within the CBM statute as relating to a financial product or service? No, Your Honor, because the focus of the claims is on the authentication method, not claiming the pickup of goods or services. The hypo I posed was that that's how they verified that that was the person picking up the goods. This is an authentication system. Understood, Your Honor. And I want to make sure that we're focusing on the claims as properly construed. So let me go to the point about the central entity, for instance. The central entity is an... I'm trying to avoid to make this simpler by giving you a hypothetical of a claim which is explicit. It says here is a method for allowing someone to authenticate himself in picking up purchased goods, okay? And the question is, is that within the statute? And the answer is it's not within the statute because the claim is focused on the secure authentication method. The context in which it occurs is not the focus of the claims, and we have to look at the claims as properly construed here. So just because it involves activities on the Internet involving e-commerce, in certain situations it may involve services, in other situations it may involve goods. There's nothing about the claims that talks about payments. There's nothing about the claims that talk about exchanging money or engaging in bartering or things like that. The context of the discussion within the specification is focused on e-commerce activity, engaging activities involving goods and services. But let's be clear. Those activities can incur using your e-mail, engaging in activities involving a file-sharing program, right? So these are not activities that are financial in nature. And the point I'm trying to make, Your Honor, is when the claim is focused on activities that are not financial in nature and the claims as construed demonstrate that they can be in the hypothetical was financial in nature in the sense that the goods were purchased over the Internet. So it sounds like Your Honor is making a claim limitation around purchasing, and I just want to make it clear that that is not a claim limitation here, and it's not a limitation of the claims as construed. You're changing the hypothetical. People come here, lawyers come here, we ask them hypotheticals. People have to answer the hypotheticals. They don't get to change the hypothetical. Let me go back and make sure I understand Your Honor's hypothetical. If there is a situation involving authentication. There is a claim which says, here is a method for authenticating the person picking up goods that were purchased over the Internet. Then that is focused on a situation where the authentication occurs while there is a transaction involving picking up goods that, it's unclear to me from your hypothetical whether there's a monetary exchange or not. Purchased over the Internet. Purchase means buying something, which means money. And if that is an element of the claim, then it's closer to the case law where there is a financial element. And in that particular situation, I would agree it falls within CBM jurisdiction. But that is not the case here. These claims are focused on authentication involving the user, an external entity, and a central entity. There's no payment language within the claims or the specifications. If you had been listening to our hypothetical, you could have said that 10 minutes ago. I'm sorry, Your Honor? I said if you had been listening to the language of our hypothetical, you could have said that 10 minutes ago. Understood, Your Honor. Thank you, Your Honor. I want to get to this question about the technological invention exception, the safe harbor under CBM. What the PTO has done here is it has had, through its regulations. You said in the blue brief at note 62, page 46, even though you didn't, quote, did not argue the issue to the PTAB, you didn't waive it because it's contrary to statute. Is that a correct summation? Your Honor, we didn't argue it to the PTAB because there is not an opportunity during the proceeding where the regulation applies to argue that the regulation is wrong. That's not part of the procedure at the PTO. So as courts have recognized in these situations where you're arguing the agency got the regulation wrong, that is an issue that can be addressed on appeal even if it wasn't addressed in the proceeding below. So that's the point that we're making here. You cite to a DC circuit case, Pacific Gas and Electric, which of course didn't involve the PTO, which says the underlying policy embodied in the rule is not generally subject to challenge before the agency. That's right, Your Honor. Why does that case support your position that a party cannot challenge a regulation before an agency? It supports our position in the sense that where the agency has implemented a regulation, it's actually stronger than a policy. It's the rules for acting and engaging in activities. Are there any PTO rules that say a party cannot challenge a reg before the PTAB? I would answer that in the negative, which is there is no procedure. Then you say no. You're time is short. No, Your Honor. There is no ability during the PTO PTAB proceeding to raise an issue with a regulation that you think is contrary to statute. We've held it invasive that a party waives an argument because it fails to present a question before the PTAB because it deprives this court of the benefit of the PTAB's informed judgment. Why should we disregard this practice? Your Honor, because the PTAB has already spoken on what it thinks the technological invention exception is. There's nothing that the PTAB can add to the record here. It engaged in rulemaking and comment. It decided to implement this regulation based upon a comment of a senator. And so there's nothing that it can add from the record to help this court review this because it's a pure legal issue. It's a question of whether the regulation is contrary to statute. And under Chevron Step 2, even if we decide that the statute is ambiguous, it's not one of the permissible understandings of the statute as it should be implemented in a regulation. So, again, there's no deference there. Okay. Thank you, Your Honors. Thank you. Mr. Peterman? Let me please the court. Let me start first with Judge Hughes' question on mootness. I actually think, unfortunately, that this case might not be moot if you affirm on 101 because there were a few dependent claims that were at issue in the CBM that I'm not sure were at issue in the district court. And so if I could unpack that. I mean, if you think that the district court invalidated the entire patent, then it's moot. Yes, I agree with that. The complaint, as I read it, said I did have it. It says at least. Yep. I mean, given your friend's concession on the other side, if we dismiss this as moot, isn't that going to prevent them from asserting those dependent claims in any further litigation, if that's what you're worried about? That would be the concern. And so, yeah, I think if the court reads the 101 judgment to cover all the claims of the patent and affirms that, then that would moot the CBM. It's just a question of, you know, does the judgment actually cover all the claims? I think if your friend has conceded that it does. We'll take that concession. So turning then, subject to the panel's preferences, I'll focus on the two issues regarding the definition of whether this patent is a covered business method. On the first piece of it, it does meet the statutory definition because Claim 1 claims a method for performing operations used in the practice of a financial service, and in particular, it has a financial activity element through the PTAB's construction of the term external entity. The PTAB construed that term to mean a party offering goods or services in e-commerce that also meets some other requirements. And appellant's expert conceded that e-commerce involves the buying and selling of goods and that it involves financial transactions. And so, given the PTAB's construction and given the concessions of the appellant's expert, there is that financial activity element. And the fact that there's additional things in the claims about authentication and all that, it doesn't change the fact that there's this financial activity element. So what about Claim 5, which talks about non-financial? So our reading of Claim 5 is in accord with what Your Honor had suggested, that it is, when it's saying non-financial there, it's talking about non-payment. And so it's true that Claim 1 might cover situations in which not every transaction is going to involve payment, but regardless of that, there's still this additional requirement that the external entity is offering goods and services in e-commerce. Let me offer you another hypothetical. Supposing that Claim 5 is non-financial. If there's the presence of a potentially non-financial claim, can a patent still be CBM eligible? Yes, Your Honor, because as long as one claim of the patent meets the statutory definition of a CBM, the patent is a CBM, and that's certainly the PTO's position. It took that position in response to a comment during its rulemaking. I'm asking that because Claim 4 was disclaimed, and what we've got left is the independent claim, and the question is whether the independent claim is limited to financial product or service. They're arguing that it's not, because Claim 5 necessarily implies that the independent claim applies to non-financial transactions. Right. So I was just kind of answering the hypothetical that just generally if there's one claim that's a CBM claim, the whole patent. To your question, though, I think we would agree that Claim 1, it includes, you know, Claim 5 within its scope, and so it does relate to both financial and non-financial transactions, but the patent uses that word financial to refer to payment, and that's a different sense than how the statute uses it. And so even if Claim 1 here includes both payment and non-payment transactions, Claim 1 still does have this financial activity element because the external entity is someone that has to be involved in e-commerce, which is the buying and selling of goods, and so it goes to some of the hypotheticals that were asked of counsel about, you know, it might be a non-payment transaction involving, you know, pick-up, authentication of pick-up of the goods, but it's still, that's still an operation that's being used in the practice of a financial service, because there has been a transaction, and it's just facilitating and allowing someone to complete that transaction. So we believe Claim 1 does have a financial activity element. This is not like the cases, some of the hypotheticals have been offered in this Court's other opinions about a patent to ditch digging or the light bulb where it only kind of incidentally touches on financial activity. Here the entire specification ties the present invention as a whole to a means of increasing security in e-commerce, and that's how it frames the entire problem, and e-commerce is certainly financial. So this isn't a situation where the PTAB relied on the forbidden legislative history. PTAB's final written decision doesn't reference that. It cites this Court's decisions in unwarranted plan and the now vacated decision in secure access, and so the PTAB applied the right standard. There is a financial activity element, and its determination on that part of the CBM analysis should be affirmed. Turning to the technological invention exception, here it's just important to remember that the issue is very narrow. We have a statute that directs the Director of the Patent Office to promulgate regulations, specifically delegates that. The Director did promulgate those regulations. There's no dispute that... And to that, we don't think it is questionable. I mean, I know there's some language in some of this Court's cases that have expressed some doubt on it, but ultimately the question we're asking is, is this a reasonable interpretation of the statute? And the Director gets Chevron deference on that point, and it is reasonable for two reasons. It tracks the statutory text, so the text talks about a technological invention. An invention, just the plain meaning of the word, is something that somebody comes up with first. When we say Thomas Edison invented the lightbulb, it's because he was the first person to come up with a lightbulb. And so that's where this concept of novelty and non-obviousness comes in in the Board's regulation. And then the statutory text says, well, technological invention. So technological modifies invention. So the Director has reasonably said that it's got to be the technological feature in the claim that is the new and non-obvious thing. And so given that the Director's regulation is a reasonable interpretation of the plain meaning of the statute, we think that part of the regulation is permissible. It also does track the legislative history. When Senator Schumer was discussing the technological exception, he uses that same phrase. He says the exception only excludes those patents whose novelty turns on a technological invention over the prior art. And so there again, the legislative history refers to this novelty of the technological feature. And so given both the plain meaning of the statute and the legislative history, the Board, in their regulation, was reasonable in imposing that requirement. There's no dispute that if the regulation is sustained, that this patent doesn't meet it, because the Board made a specific finding that all the alleged technologies here were known, that these were just generic computer components. And really, the Board's findings here are very similar to the Sitesound case, where the court affirmed the finding that that was a CBM patent under similar facts. It didn't expressly talk about the validity of this regulation, but certainly the Board's factual findings were the same in both this case and in Sitesound. And to the point that was being discussed with counsel, this whole issue was potentially waived, because it was never made to the agency, and certainly there was an opportunity to do that. Often litigants find themselves in a lower court or a lower tribunal, where they might be bound by some higher authority, but you still make the argument to preserve it in the lower tribunal. Even if the lower tribunal might say, well, we're bound, then you've preserved it for appeal, and that wasn't done here. I don't care what the problem is here. I think there's a lot of law about whether agencies can invalidate regulations as exceeding statutory authority or constitutional provision. None of that authority is discussed in the briefs, so I don't know what the answer to that is. Maybe even if they don't have the authority to decide it, the issue still has to be raised there. But this is a more complicated issue than the briefs would suggest, I think. And that's a fair point, Judge Dyke. I guess I would just suggest that if it's the appellant that's the one raising the issue, ultimately the onus should be on them to show it's not waived, and if they haven't done that, it doesn't seem like it's properly presented here. But I understand your point, and that's why I started out with the merits, because frankly, I think if we get to the merits of this regulation, it is a reasonable reading of the statute. Since the actual merits of the case weren't addressed, I don't have anything further to say on them unless there are questions about the continuity issue or the board's written description findings. All right. Thank you. Ms. Bateman? Just so that we're absolutely clear about this, do I understand your position correctly that we should read the district court's judgment with respect to 101 as invalidating all the claims of the 432 patent? Yes, Your Honor, that's what the court did. It determined that the claims are directed to non-patentable subject matter. So I think Your Honor's getting to the mootness issue of CBM. Our understanding is if the full patent is invalidated, there's nothing for the court to deal with in the CBM proceeding. With respect to this issue about the permissible interpretations, I just want to make a few points. A permissible interpretation of a jurisdictional statute does not import a mini-patentability test. And as this court indicated in Versada, one of the problems with the PTO's regulation is that it's circular in nature. It calls it a technological invention by talking about a technological invention. What the AIA requests that the PTO do is issue guidelines for understanding whether something meets or doesn't meet the technological invention exception. And let's keep the framework of the AIA appellate process in mind here. What has happened is they have an IPR, they have a post-grant review program, and CBM is an exception. It's a special program that sunsets in 2020. It's focused on a particular type of patent that has a particular type of claims. And what this court's case law tells us is if a claim is read in a manner that it can involve both financial and non-financial activities. In this case, we're focusing, I think, on the transaction concept within the claim. That does not bring it within the purview of the CBM jurisdictional statute. And then we go to that step two that we've been talking about as well. Is it a technological invention such that it is not a business method, that it falls within the safe harbor? This is a computer-implemented technology that's focused on a specific problem arising from the way people engage in activities on the Internet. It provides a specific... Your Honor, in the past, there were manual activities not involving the Internet, but they did not involve this real-time, dynamic, time-dependent code that is the dynamic code at issue in this case. And even if we look in the context of computer technology and the prior technology, it often involved hardware. It involved digital certificates. And in fact, the PTO today, when you're engaging in practice before the PTO, you use this digital certificate that you have to request ahead of time. It takes weeks to get. You have to upload it. Sometimes it doesn't work, right? And it doesn't expire unless and until you tell the office that you need a new one. So this is a specific implementation to deal with a specific problem that was not fixed by the prior computer authentication methodologies. Thank you, Your Honor.